1999 ND 85

**Sandra Jean WINTZ, f/k/a Sandra Jean Crabtree, Plaintiff and Appellee,**

v.

**William Jim CRABTREE, Defendant and Appellant.**

No. 980244.

Supreme Court of North Dakota.

May 19, 1999.

Donald L. Peterson, Kenner Sturdevant Peterson & Cresap, P.C., Minot, ND, for plaintiff and appellee.

Robert S. Thomas, Thomas & Thomas, Minot, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] William Jim Crabtree appealed from a district court order which dismissed his motion to modify custody. We affirm.

[¶ 2] Sandra Jean Wintz and Crabtree married in 1984. Two children were born during their marriage, Nadia and William. The parties lived in Germany while Crabtree served in the military. In March 1992, Wintz and Crabtree separated and entered into an agreement dividing their assets and establishing custody. The agreement provided Wintz would have sole care, custody and control of the children. Following the separation, Wintz and the children moved to the United States. In 1993, Wintz obtained a divorce in Mexico. The divorce decree stat-

ed Wintz would continue to have custody of the parties' children. In reliance upon the divorce decree, both parties remarried.

[¶ 3] Between 1993 and 1997, the children resided with Wintz in New York, California and Arizona. In August 1997, the children came to live with Crabtree in Minot, North Dakota after the parties negotiated an agreement which provided Crabtree would "[h]ave extended visitation/custody for the ⁹⁷/₉₈ school year." The agreement further stated "[i]f either child desires to stay beyond the school year, additional arrangements will be made by the maternal parents." In May 1998, Wintz inquired when the children would return to Arizona. Crabtree asked if the children could stay another year, but Wintz said no.

[¶ 4] Crabtree filed a motion to modify custody in North Dakota district court. Wintz responded arguing the district court lacked jurisdiction. The district court agreed with Wintz and dismissed Crabtree's motion. In its memorandum opinion, the district court determined it would not exercise jurisdiction because Arizona, rather than North Dakota was the children's home state at the time the motion was filed. In addition, the district court declined jurisdiction on the basis North Dakota is an inconvenient forum under N.D.C.C. § 14–14–07.

[¶ 5] Before a court can proceed to the merits of an interstate custody dispute, it must first determine whether it has jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), codified as N.D.C.C. ch. 14–14, and the Parental Kidnapping Prevention Act (PKPA), codified as 28 U.S.C. 1738A. *Luna v. Luna,* 1999 ND 79, ¶ 9, 592 N.W.2d 557 (citing *Zimmerman v. Newton,* 1997 ND 197, ¶ 8, 569 N.W.2d 700; *Hangsleben v. Oliver,* 502 N.W.2d 838, 841 (N.D. 1993)). The analysis for deciding jurisdiction in an interstate custody dispute is well-established:

> Under the UCCJA and the PKPA, a court must go through a multi-step process in determining whether to exercise jurisdiction. First, a court must determine whether it has jurisdiction, and, if it finds that it does, it must then determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction. If there is a pending custody proceeding in another state, the petitioned state must stay its proceedings or decline jurisdiction. N.D.C.C. § 14–14–06 [UCCJA § 6], PKPA § 1738A(g). If another state has issued a decree, the court, in order to modify that decree, must apply the multi-step process contained in section 14–14–14, N.D.C.C. [UCCJA § 14], and PKPA sections 1738A(c), and (f). Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, a determination must be made by the forum state whether it is appropriate to exercise jurisdiction in light of the convenience of the forum and the conduct of a parent. N.D.C.C. §§ 14–14–07, 08 [UCCJA §§ 7, 8].

*Id.* (quoting *Hangsleben,* at 842 (footnotes omitted)). Thus, a trial court must consider whether it has jurisdiction, and if so, whether it is appropriate to exercise jurisdiction. *Id.*

[¶ 6] Under N.D.C.C. § 14–14–03(1)(a), North Dakota has jurisdiction to make a child custody determination if North Dakota "(1) is the home state of the child at the time of commencement of the proceeding...." N.D.C.C. § 14–14–02(5) defines a home state to mean "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months...."

[¶ 7] The courts which have faced the question of whether or not temporary presence in the state for more than six months under a visitation order or by consent of the parties is sufficient to confer jurisdiction upon that state reach opposite conclusions. *E.g. In re Marriage of Arulpragasam,* 304 Ill.App.3d 139, 237 Ill.Dec. 470, 709 N.E.2d 725, 732 (1999) (adopting "simple" home-state test from *In re Marriage of Schoeffel,* 268 Ill. App.3d 839, 206 Ill.Dec. 59, 644 N.E.2d 827 (1994): "[W]here has the child lived with a person acting as a parent for the last six months?"); *In re Frost,* 289 Ill.App.3d 95, 224 Ill.Dec. 409, 681 N.E.2d 1030 (1997) (holding court can consider parents' agreement and their intent regarding status of

child's out-of-state absence in determining whether jurisdiction vests in another state if the out-of-state absence extends beyond six months); *In re Marriage of Schoeffel,* 268 Ill.App.3d 839, 206 Ill.Dec. 59, 644 N.E.2d 827 (1994) (holding statute is a simple "home state" test: where has the child lived with a person acting as a parent for the last six months?); *Richardson v. Richardson,* 255 Ill.App.3d 1099, 193 Ill.Dec. 1, 625 N.E.2d 1122 (1993) (holding eleven-month consensual visitation in Illinois did not qualify Illinois as a home state). There are policy reasons supporting both views, but we need not determine whether the district court's finding that Arizona, rather than North Dakota, is the children's home state is correct. Even assuming North Dakota arguably is the children's home state, the court nevertheless concluded North Dakota should decline jurisdiction because it is an inconvenient forum.

[¶ 8] "It is well settled that the decision whether to decline to exercise jurisdiction on inconvenient-forum grounds lies entirely within the trial court's discretion, and its decision will be reversed on appeal only for an abuse of discretion." *Smith v. Smith,* 534 N.W.2d 6, 10 (N.D.1995) (quoting *Dennis v. Dennis,* 387 N.W.2d 234, 235 (N.D. 1986)). An abuse of discretion occurs only when the trial court acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Krizan v. Krizan,* 1998 ND 186, ¶ 13, 585 N.W.2d 576.

[¶ 9] The forum non conveniens provision, outlined at N.D.C.C. § 14–14–07(3) [UCCJA § 7(c)], allows a court, after having determined that it has jurisdiction, to decline to exercise jurisdiction if it finds that it is an inconvenient forum and that a court in another state is a more appropriate forum.

[¶ 10] Section 14–14–07(3), N.D.C.C., reads:

In determining whether it is an inconvenient forum, the court shall consider whether it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others, whether:

a. Another state is or recently was the child's home state;

b. Another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

c. Substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

d. The parties have agreed on another forum which is no less appropriate; and

e. The exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 14–14–01.

[¶ 11] After reviewing the record and circumstances presented in this case, we conclude the district court did not abuse its discretion in finding North Dakota an inconvenient forum in which to resolve this custody dispute. The district court specifically considered and applied the statutory factors contained in section 14–14–07(3), N.D.C.C., concluding:

8. I determine that North Dakota is an inconvenient forum under N.D.C.C. § 14–14–07.

a. Arizona is the present home state of the children

b. Arizona has a closer connection with the children and their mother

c. Substantial evidence concerning the children's present or future care, protection, training and personal relationships is more readily available in Arizona

[¶ 12] The factors in the present case weigh in favor of jurisdiction in Arizona, rather than North Dakota. Prior to moving to North Dakota for the 1997–98 school term, the children lived in Arizona with their mother for more than six months, making Arizona a recent "home state" of the children. In addition, the record shows the children and their mother have a closer connection to Arizona, as opposed to North Dakota. With the exception of the 1997–98 school term, the children have lived with Wintz all of their lives. Testimony at the hearing indicated Crabtree recently moved to North Dakota in

August 1997, about the same time the children came to stay with him. We also believe the district court properly determined "[s]ubstantial evidence concerning the children's present or future care, protection, training and personal relationships is more readily available in Arizona." The most recent evidence concerning the children's care is in North Dakota. However, under the terms of the written agreement between the parties for visitation during the 1997–98 school term, evidence concerning the children's future care would develop in Arizona. Further, the exercise of jurisdiction in North Dakota district court would contravene one of the explicit purposes of the UCCJA. While Crabtree had rightful custody of the children for a period of time, in our view, his retention of the children beyond the period of time agreed upon by the parties equates with child snatching. N.D.C.C. § 14–14–01(e) explains that one of the general purposes of the UCCJA is to "[d]eter abductions and other unilateral removals of children undertaken to obtain custody awards." While Crabtree did not "abduct" the children in the true sense of the word, he did engage in an equivalent act by refusing to return the children following visitation. But for Crabtree's wrongful retention of the children, they would have returned to Arizona following the school term. Based on the foregoing, we conclude that it was proper for the district court to decline jurisdiction.

[¶ 13] The order dismissing Crabtree's motion is affirmed.

[¶ 14] SANDSTROM, KAPSNER, MARING and NEUMANN, JJ., concur.